**UNITED STATES of America, Plaintiff,**

**v.**

**Carlota LONDOÑO–CARDONA, Defendant.**

**Crim. No. 90–328 (JAF).**

United States District Court, D. Puerto Rico.

March 18, 1991.

Rosa E. Rodríguez–Vélez, Asst. U.S. Atty., Daniel López–Romo, U.S. Atty., San Juan, P.R., for plaintiff.

Scott T. Kalisch, Coral Gables, Fla., for defendant.

## ORDER

FUSTE, District Judge.

Defendant here seeks credit for time served against her sentence as a result of a pre-trial conditional release in which she was under 24–hour house arrest. Defendant pled guilty to an information charging a violation of 21 U.S.C. § 841(a)(1). After making the calculations under the sentencing guidelines, this court sentenced defendant to sixty-three months, with a supervised release to follow of four (4) years.

Defendant was arrested on July 16, 1990. She was held in pre-trial detention in Puerto Rico until August 10, 1990. On August 10, 1990, she was released on bond pending trial. The release was conditioned on compliance with a twenty-four-hour house arrest. It appears that all aspects of the house arrest order have been complied with. From August 10th through August 16th, the house arrest was monitored by unannounced telephone calls. On August 17, 1990, Pretrial Services placed an electronic ankle bracelet on defendant, and an electronic monitor in her house. The monitor and bracelet allowed defendant a range of one hundred and fifty feet (150'). An affidavit supplied by defendant states that she cannot go more than thirty feet outside her front door, and that she cannot pick up her mail without setting off the alarm. Defendant has made only a limited number of forays outside her home during the period of house arrest, each with the knowledge and prior approval of her pretrial officer. She attended church once per week, made four visits to the doctor to have her children vaccinated, and to visit her gynecologist and eye doctor. She visited her attorney on one occasion to prepare for this case.

## DISCUSSION

The statute applicable to defendant's request reads in relevant part as follows:

> **(b) Credit for prior custody.**—A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences—
>
> (1) as a result of the offense for which the sentence was imposed; ....

18 U.S.C. § 3585(b).

This version of the statute became applicable to offenses committed after November 1, 1987, *United States v. Chalker*, 915 F.2d 1254, 1256 (9th Cir.1990), but its interpretation is haunted by the ghost of its predecessor. The formerly applicable statute, codified at 18 U.S.C. § 3568 (*repealed by* Sentencing Reform Act of 1984, Pub.L. 98–473, tit. II, § 203(a), 98 Stat.1976 (1984)) read:

> [t]he Attorney General shall give any such person credit toward service of his sentence for any days spent in custody in connection with the offense or acts for which sentence was imposed.

■ Our first question is whether we have the power, in the first instance, to credit defendant with time served, or whether that power is still vested with the Attorney General. If the power is still vested with the Attorney General in the first instance, defendant has failed to exhaust her administrative remedies. The First Circuit has yet to speak on this issue. Legislative history is silent on the deletion of the Attorney General reference. Comprehensive Crime Control Act of 1984, S.Rep. No. 225, 98th Cong., 2d Sess. 128–29, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3311–12.

The Seventh and Eleventh Circuits [1] take the position that the rewritten statute was not meant to create any substantive change in the law, and that the failure to explicitly reserve the power to the Attorney General was unintentional on the part of Congress. Therefore, those circuits have ruled that the Attorney General has the power to make the determination in the first instance, not the district court. In *United States v. Lucas*, 898 F.2d 1554, 1556 (11th Cir.1990), the Eleventh Circuit states that "Congress did not intend any change in assigning this determination." The *Lucas* court points to no legislative history in support of its position. Its justification is curious. The court notes that the Attorney General had delegated his authority to make the determination to the Bureau of Prisons (BOP), and that regulations have been established governing formal review of inmate's requests. The court then bol-

---

**1.** The Tenth Circuit has assumed that the Attorney General still has the initial discretion to credit time, but the court did so without examining the new statutory language in the rewritten version, and by citing to 1984 case law. We are not convinced that the Tenth Circuit addressed the issue, and we decline to follow a ruling *sub silentio* which we otherwise disagree with.

sters its argument by pointing out that the regulations were not changed in response to the enactment of the new law.

We are at a loss to explain how the failure to change *administrative* regulations following the implementation of the new statute tends to prove *Congressional* intent. Assuming that the district court and the Attorney General both retain the power to give credit, as some courts have held, *Chalker, supra,* the failure to change the regulations is explained on the grounds that the regulations are still needed as a procedure for the BOP to exercise its grant of power, independent of any power which the court might also have. Assuming that the power is only vested in the district court, the failure to rescind or modify now moot regulations has no bearing on the intent of Congress in drafting the statute which mooted the regulations. No rational argument can support the proposition that the lack of change in the regulations governing the Attorney General's decision-making process with respect to granting credit for time served signals that the new statute is to be read in the same way as the old. We find the reasoning of the *Lucas* court unpersuasive.

The Seventh Circuit, in *United States v. Brumbaugh,* 909 F.2d 289 (7th Cir.1990), reached the same result as *Lucas,* stating that "[t]he use of the passive voice in the statutory language requires us to infer a subject; the most logical inference is that the Attorney General, who has been charged with granting credit under section 3568 for over thirty years is the intended subject of the sentence." *Id.,* at 291. The *Brumbaugh* court also found significant the difference between statutory language in which Congress explicitly stated "[t]he court shall" or "[t]he court may" and section 3585 which does not specifically mention the court.

We do not agree that it is logical to infer that where Congress explicitly *deleted* a reference to the Attorney General, it is the Attorney General whom Congress meant to retain exclusive jurisdiction over the matter in the first instance. "It is a canon of statutory construction that where ... the

works of a later statute differ from those of a previous one of the same or a related subject, the legislature must have intended them to have a different meaning." *Klein v. Republic Steel Corp.,* 435 F.2d 762, 765–66 (3rd Cir.1970). We think one should not read the lack of legislative history as an indication that the language changes in the statute should be ignored. That seems to us an elevation of the legislative history from its proper role as an interpretive devise in the face of unsolvable ambiguity, to a parallel source of substantive law. *See, Chalker,* 915 F.2d at 1257. If anything, we think a lack of legislative history indicates that a new reading was intended.

We follow the Ninth Circuit *Chalker, supra,* and the Sixth Circuit, *United States v. Wilson,* 916 F.2d 1115 (6th Cir.1990), and hold that the district court has the power to grant credit under the statute.

■ The second question is whether we should exercise that power to grant relief in this case. The issue is whether 24–hour house arrest is "official detention" for purposes of the statute. No First Circuit case we could find has explored the breadth of that phrase as it appears in the new statute. We have only an interpretation of the term "in custody" as it appeared in the old statute. *United States v. Figueroa,* 828 F.2d 70 (1st Cir.1987), but we consider the phrases to be substantially similar. *United States v. Woods,* 888 F.2d 653 (10th Cir.1989).

In *Figueroa* the court faced a request for credit against a sentence for time which the defendant spent on conditional release pending trial. There is no indication in the published opinion that the defendant in that case was on any kind of house arrest or actual detention. The cases referred to in *Figueroa* represent instances in which the party seeking credit was on a relatively non-restrictive conditional release. In *Villaume v. United States Dept. of Justice,* 804 F.2d 498 (8th Cir.), *cert. denied,* 481 U.S. 1022, 107 S.Ct. 1908, 95 L.Ed.2d 514 (1986), the movant had travel restrictions and reporting conditions, and the court there rejected an argument that those restrictions amounted to "custody". In *Orte-*

ga v. United States, 510 F.2d 412 (10th Cir.1975), the movant was free on a personal recognizance bond. In *Polakoff v. United States*, 489 F.2d 727 (5th Cir.1974), the petitioner was free on bond, but under travel and social restrictions, and had to report weekly. For all practical purposes, the credit-seekers in these cases were in fact "free," albeit with a conditional freedom.

We think the case before us is distinguishable. This defendant was confined to a small space, on a nearly constant basis, with round-the-clock "surveillance". Her every move was restricted, and her trips to the outside world were only made with the express approval of court officials. Her situation cannot be compared with a person on conditional release whose only conditions are a weekly meeting with court personnel and a ban on travel out of the jurisdiction. We think that it would be reading the *Figueroa* case too broadly to hold that *no* type of pre-trial detention other than actual confinement at a penal institution could qualify for credit under § 3585. Indeed, in *United States v. Peterson*, 507 F.2d 1191 (D.C.Cir.1974), the first case cited in *Figueroa*, the D.C. Circuit gave credit for pre-trial time confined in a hospital. *See Chalker*, 915 F.2d at 1258 (interpreting new statute to find that district court did have discretion to give credit for time spent in residential drug treatment program.)

We find nothing in *United States v. Woods*, 888 F.2d 653 (10th Cir.1989), which would affect the outcome we reach today. In *Woods*, the circuit court affirmed the district court's refusal to grant credit for time spent in a halfway house. Woods could work, and at least part of the time travel home on weekends. Though he was ordered to "reside" at the halfway house by the court, there is nothing in the published opinion to show that the halfway house imposed a 24–hour guarded curfew like the one imposed on the defendant before us. Like *Figueroa*, the *Woods* court relies primarily on case law precedent in which the conditions of release were much less restrictive than a 24–hour confinement.

We hold that defendant is entitled to credit for the time which she spent incarcerated in Puerto Rico prior to her conditional release, and then for credit for time spent under 24–hour house arrest prior to the commencement of the date of her sentence. We therefore ORDER the Bureau of Prisons to credit her with time served from the date of her arrest through the date of the commencement of her sentence.

IT IS SO ORDERED.